UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TONY J. JACKSON, | CASE NO. C18-5657 BHS |
| Petitioner, | ORDER |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

This matter comes before the Court on the Ninth Circuit's remand, Dkt. 57, ordering the Court to consider Petitioner Tony J. Jackson's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, Dkt. 1, based on ineffective assistance of counsel. Prior to entering his plea, the Government assured Jackson that his co-defendant would not receive a better plea deal. Later, Jackson's co-defendant was offered and signed a more favorable plea deal. Jackson seeks to vacate his conviction on the basis that his counsel's assistance was ineffective because counsel did not inform him of the non-binding nature of the Government's assurance.

ORDER - 1

# I. BACKGROUND

On November 20, 2015, Jackson pled guilty to Conspiracy to Engage in Sex Trafficking by Force, Fraud and Coercion. *United States v. Jackson*, No. 14-cr-5242 RJB, Dkt. 136 (W.D. Wash. Nov. 20, 2015). The November 20 hearing was initially set for the Court to consider a motion to suppress that Jackson filed. *Id.*, Dkts. 122, 127. Jackson and the Government reached a plea deal before the hearing commenced and the change of plea was heard in place of the suppression motion. Dkt. 72 at 2.

The parties agree that, just before the change of plea hearing commenced, a conversation ensued between Jackson, Jackson's attorney (Charles Johnston), Assistant United States Attorney Ye-Ting Woo, and Assistant United States Attorney Bruce Miyake regarding Jackson's plea agreement. Jackson had expressed to Johnston that he was concerned that, if he pled guilty, Young may receive a better plea deal than him. Jackson asserts that Johnston then told the AUSAs that Jackson "was worried that if he took the deal, the co-defendant (Mr. Young) would get a better deal later." Dkt. 70-2, ¶ 6. According to Jackson, Woo then reassured him that Young "would not get a better offer" and that he would "get the same amount of time as [Jackson] if not more." *Id.* ¶ 7 (internal quotation marks omitted). Jackson asserts that he would not have pled guilty absent that "promise" from the Government. *Id.* ¶ 3.

While the Government agrees that this conversation took place, it disagrees about what exactly it represented to Jackson. The Government asserts that Johnston asked whether Young would receive a more favorable plea offer than Jackson. Dkt. 72 at 3. It asserts that Miyake responded that the Government "made a similar plea offer to Young

that did not involve an offer of less than 10 years of imprisonment and that Young had declined to accept the government's plea offer." *Id.* (internal quotation marks omitted).

Johnston's recollection of the conversation is similar to Jackson's.[1] In his affidavit, Johnston asserts that Jackson expressed reluctance to plead guilty if it was possible Young would receive a better offer from the Government later. Dkt. 70-3 at 2; *see also* Dkt. 70-4, ¶ 5. He states that Miyake then "verbally promised Mr. Jackson that, that was not going to happen and that Mr. Young would not get a better offer but the same offer of time if not more." Dkt. 70-3 at 2; *see also* Dkt. 70-4, ¶ 8. Johnston further asserts that "it was for [Jackson's] benefit that [Johnston] had the conversation with Mr. Miyake in front of Mr. Jackson so that his concerns would be addressed and guilty plea would go through." Dkt. 70-4, ¶ 9. Johnston also states that he did not think the Government would have agreed to put the promise in writing and that, when he later confronted Miyake about Young's better plea agreement, Miyake told him that "he knew he promised [Johnston] that the two co-defendants would get the same deal but that things changed and the case against Mr. Young had fallen apart." *Id.* ¶¶ 10–11.

Miyake's asserts that Johnston, on behalf of Jackson, asked the Government whether Young would receive a more favorable plea offer. Dkt. 20-5, ¶ 5. He asserts that the Government told Johnston and Jackson that it had extended a similar plea agreement to Young, not offering less than 10 years of imprisonment, and that Young declined that

---

[1] Johnston does state, however, that he does not remember AUSA Ye-Ting Woo being present. Dkt. 70-4, ¶¶ 4, 7. The record reflects that Woo was present at the hearing, *Jackson*, No. 14-cr-5242 RJB, Dkt. 136, but whether she was present for the conversation has not been firmly established.

offer. *Id.* He emphasizes that Jackson and Young's plea agreements were not interdependent. *Id.* ¶ 6.

Jackson also submitted a declaration from Terrence Kellogg, Young's attorney at the time. *See* Dkt. 20-6. Kellogg asserts that, "[o]n at least one occasion, to the best of [his] recollection Mr. Miyake told [him] that the government had advised Mr. Jackson that they, the government, would not extend a more favorable plea offer to Mr. Young than the offer received by Mr. Jackson. *Id.* at 3.

The parties agree that the Government's promise was not included in the written plea agreement and that Jackson represented to the presiding judge, Judge Bryan, during the hearing that the written plea agreement encompassed the entire agreement between the parties. Jackson ultimately pled guilty to one count of Conspiracy to Engage in Sex Trafficking by Force, Fraud, and Coercion, agreeing to a sentencing recommendation between 120 and 180 months. Judge Bryan sentenced Jackson to 140 months[2] imprisonment on April 22, 2016.

Young and Jackson were charged with largely the same crimes.[3] In June 2016, Young pled guilty, agreeing to a custodial sentence of 120 to 156 months. Dkt. 70 at 5.

---

[2] The original judgment stated that the Court imposed a sentence of 144 months, *Jackson*, No. 14-5242, Dkt. 177, but the judgment was later corrected to reflect a 140-month sentence, *id.*, Dkt. 445.

[3] Young was charged with one count of Conspiracy to Engage in Sex Trafficking by Force, Fraud and Coercion; three counts of Sex Trafficking Through Force, Fraud, and Coercion; one count of Conspiracy to Transport Females for Prostitution; and five counts of Interstate Transportation for the Purpose of Prostitution. *Jackson*, No. 14-5242, Dkt. 172.

Jackson was charged with one count of Conspiracy to Engage in Sex Trafficking by Force, Fraud, and Coercion; three counts of Sex Trafficking through Force, Fraud, and Coercion;

Young's attorneys subsequently discovered that one of the police agencies who had investigated the case had suppressed impeachment evidence regarding a critical witness[4]. *Id.* Judge Bryan therefore allowed Young to withdraw his guilty plea and, in August 2017, Young pled guilty to a lesser charge, Interstate Transportation for the Purpose of Prostitution, and agreed to a 90-month custodial sentence. *Id.* Judge Bryan sentenced Young to 90 months imprisonment on February 15, 2018. *Id.*

On August 13, 2018, Jackson filed the instant motion under 28 U.S.C. § 2255,[5] Dkt. 1, and a memorandum of law in support of the motion, Dkt. 2. Jackson argued that his guilty plea was conditioned on a promise made by the prosecutor that the government would not offer less time to Young and that the prosecutor breached the agreement when he offered Young a better deal. *Id.* Jackson requested to be resentenced, tendered the performance of the Government's promise that he would get the same amount of time in custody as Young, or granted any other remedy the Court deemed appropriate. *Id.* The Government responded and moved to dismiss the petition, Dkt. 11, and the Court

---

one count of Conspiracy to Transport Females for Prostitution; and two counts of Interstate Transportation for the Purposes of Prostitution. *Id.*, Dkt. 29.

[4] It is unclear whether Jackson would also have been able to suppress this evidence had he not pled guilty in 2015.

[5] Jackson previously moved for habeas relief in January 2017 on the grounds that Johnston's performance was deficient because he told Jackson that his offense level was 34 when the actual base offense level was 14. *Jackson v. United States*, No. 17-cv-5064 (W.D. Wash. Jan. 27, 2017), Dkt. 1. Judge Bryan denied Jackson's petition because Johnston could not have known Jackson's base offense level was 14—that was determined in a Ninth Circuit case that was decided after Jackson pled guilty. *See id.*, Dkt. 15. Jackson filed that petition before Young withdrew his initial plea.

1  dismissed the petition for lack of jurisdiction after deeming it a second or successive
2  petition, Dkt. 14.
3        On February 7, 2019, Jackson filed a motion for reconsideration arguing that the
4  motion was "second-in-time" instead of second or successive because the factual
5  predicate of the claim, his co-defendant's plea bargain, did not occur until after his first
6  motion was denied. Dkt. 17. The Court granted Jackson's motion and permitted the
7  parties to file supplemental briefing. Dkt. 24.
8        Following the parties' supplemental briefing, Jackson filed various motions and
9  letters, one of which was entitled "Evidence in Support of Petitioner's Motion Under
10 § 2255." Dkt. 38. In that filing, Jackson cited to case law involving ineffective assistance
11 of counsel claims, argued that he had "been precluded from a claim of ineffective
12 assistance." *Id.* He requested that the Court consider his trial counsel's "deficient
13 perform[a]nce." *Id.* at 4. It is not abundantly clear from the face of his "motion" that what
14 Jackson intended to argue amounted to ineffective assistance. The filing generally states
15 that his plea was not "knowing and intelligent" because he misunderstood the
16 representations made by the Government regarding potential plea deals for Young. *See*
17 *generally id.*
18       The Court denied Jackson's motion to vacate his sentence and concluded that
19 Jackson did not assert a claim for ineffective assistance of counsel. Dkt. 39. It instead
20 considered the filing as "another document in support of his motion." *Id.* at 4. Jackson
21 sought reconsideration, Dkt. 42, and the Court denied that motion, Dkt. 47.
22

ORDER - 6

1       Jackson appealed. Dkt. 48. This Court denied Jackson's Motion to Appoint
2 Counsel for Appeal, Dkt. 54, but the Ninth Circuit subsequently ordered appointment of
3 counsel, Dkt. 55, and counsel was appointed, Dkt. 56. The Ninth Circuit affirmed this
4 Court's denial of Jackson's Motion to Vacate premised on the Government's alleged
5 violation of the plea agreement, but it concluded that this Court erred in failing to
6 consider Jackson's "Evidence in Support," Dkt. 38, as a motion to amend his petition to
7 add an ineffective assistance claim. Dkt. 57. It remanded for the Court to consider that
8 claim. *Id.*

9       On remand, Jackson filed a supplemental memorandum asserting that the Court
10 should grant Jackson's request to amend his petition to add an ineffective assistance of
11 counsel claim, that the Court should hold an evidentiary hearing on Jackson's motion to
12 vacate his sentence, and that the most appropriate remedy would be to order the
13 Government to offer Jackson the same plea deal it gave to Young. Dkt. 70. Jackson
14 argues that his counsel's performance was deficient because he failed to explain that the
15 Government's promises during plea negotiations were unenforceable. *Id.* at 8.

16       The Government argues that Jackson's supplemental memorandum asserts an
17 argument beyond the Ninth Circuit's mandate. Dkt. 72. According to the Government,
18 the Ninth Circuit explicitly remanded to allow this Court to consider three specific
19 ineffective assistance arguments: (1) counsel "failed to ensure the government's promise
20 about Young was included in the written plea agreement"; (2) counsel "failed to raise the
21 issue at the plea hearing"; and (3) counsel "instructed Jackson to tell the court there were
22 no other promises aside from the written agreement." *Id.* at 11. The Government contends

that Jackson's argument that his counsel failed to advise him on the unenforceability of the Government's alleged promise is beyond the scope of the Ninth Circuit's remand and consideration of it would therefore violate the rule of the mandate. *Id.* at 13–18.

The Government further argues that Jackson's ineffective assistance claim is barred by the law of the case because the Ninth Circuit already held that there was no binding agreement. *Id.* at 18–19. It also argues that counsel's performance was not deficient. *Id.* at 20–26. Finally, the Government contends that, if Jackson's motion to vacate is successful, the only appropriate remedy is for Jackson to withdraw his plea and for the Court to set the case for trial. *Id.* at 26–28.

Jackson replies that his pro se filings should be construed liberally, that the Ninth Circuit's opinion does not foreclose the arguments he laid out in his supplemental memorandum, and that consideration of an ineffective assistance claim mandates consideration of counsel performance as a whole, rendering his "new" assertions ripe for consideration. Dkt. 74.

The Court concludes that Jackson's ineffective assistance claim, as stated in his supplemental memorandum, complies with the Ninth Circuit's mandate and must be considered by this Court in the first instance. The Court further concludes that Jackson successfully asserts a viable claim for ineffective assistance of counsel that warrants a hearing. If Jackson is successful after the hearing, the appropriate remedy will be determined at that time.

## II. DISCUSSION

**A.    Issue on Remand**

The threshold issue is determining what exactly is before this Court on remand. The parties disagree in their interpretation of the Ninth's Circuit's opinion.

The Ninth Circuit remanded the case "for the district court to consider Jackson's ineffective assistance of counsel claim in the first instance." Dkt. 57 at 4. The Ninth Circuit interpreted Jackson's March 6, 2020 filing as a request to add an ineffective assistance of counsel claim to his petition on the grounds that counsel: "1) failed to ensure the government's promise about Young was included in the written plea agreement,[6] 2) failed to raise the issue at the plea hearing, and 3) instructed Jackson to tell the court there were no other promises aside from the written agreement." *Id.* at 21. It went on to hold that "[t]he district court abused its discretion by failing to consider Jackson's pro se letter as a request to amend his § 2255 motion to add this claim" and reminded the Court that "[p]ro se motions from prisoners are to be liberally construed." *Id.* Finally, it stated that "on remand the district court must grant [Jackson's] request to amend and consider the merits of [his ineffective assistance of counsel] claim." *Id.*

The Government argues that on remand, the Court is limited to reviewing the three arguments specifically mentioned by the Ninth Circuit. Dkt. 72. Jackson argues that the Ninth Circuit's mandate did not foreclose any of Jackson's ineffective assistance of

---

[6] Jackson's claim that Johnston did not advise him that the Government's promise was not binding is arguably the other side of the same coin of this ground.

ORDER - 9

counsel claims and that the Court should liberally interpret Jackson's pro se filings to include his instant ineffective assistance of counsel argument. Dkt. 74.

"[A]lthough lower courts are obliged to execute the terms of a mandate, they are free as to anything not foreclosed by the mandate, and, under certain circumstances, an order issued after remand may deviate from the mandate if it is not counter to the spirit of the circuit court's decision." *United States v. Kellington*, 217 F.3d 1084, 1092–93 (9th Cir. 2000) (cleaned up); *see also Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986) ("[A]lthough the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it leaves to the district court any issue not expressly or impliedly disposed of on appeal.") (internal quotation marks omitted). The lower court may consider the higher court's opinion and "the procedural posture and substantive law from which it arises" to determine what was intended by the mandate. *Id.* at 1093 (citing *In re Sanford Fork & Took Co.*, 160 U.S. 247, 256 (1895)).

The Ninth Circuit's analysis in *United States v. Thrasher* is instructive. 483 F.3d 977 (9th Cir. 2007) (*Thrasher II*). There, the Ninth Circuit remanded the case, concluding that the district court erred by failing to hold an evidentiary hearing on Thrasher's ineffective assistance of counsel claim. *United States v. Thrasher*, 122 F. App'x 876, 877 (9th Cir. 2004) (*Thrasher I*). The Circuit specifically stated, "We must remand for a hearing to resolve a critical disputed fact: whether Scarlett told Storkel that she was going to testify unfavorably to Thrasher." *Id.* It "vacate[d] the district court's order denying the section 2255 petition to the extent the petition raises claims based on Storkel's mid-trial decision not to call Scarlett, and remand[ed] for an evidentiary hearing." *Id.* On remand,

1   Thrasher argued that his counsel was also ineffective by identifying Scarlett as a witness
2   in his opening statement. *Thrasher II*, 483 F.3d 977 at 982. The district court refused to
3   hear Thrasher's new ineffective assistance argument based on the plain language of the
4   Ninth Circuit's mandate, and the Ninth Circuit affirmed. *Id.* at 983.

5         The Ninth Circuit's mandate in *Thrasher I* was abundantly clear. It held that the
6   district court erred by not holding an evidentiary hearing on one specific ineffective
7   assistance argument. *Thrasher I*, 122 F. App'x at 877. In this case, by contrast, the Ninth
8   Circuit held that this Court abused its discretion by not allowing Jackson to amend his
9   petition to add an ineffective assistance claim. Dkt. 57 at 21 ("The district court abused
10  its discretion by failing to consider Jackson's pro se letter as a request to amend his
11  motion to add this claim . . . and on remand the district court must grant his request to
12  amend and consider the merits of his claim.").

13        It is true that the Circuit characterized Jackson's letter as seeking to add an
14  ineffective assistance claim "on the grounds that counsel 1) failed to ensure the
15  government's promise about Young was included in the written plea agreement, 2) failed
16  to raise the issue at the plea hearing, and 3) instructed Jackson to tell the court there were
17  no other promises aside from the written agreement." *Id.* That characterization does not
18  bind this Court on remand for three reasons.

19        First, the Ninth Circuit remanded instructing this Court to allow Jackson to *amend*
20  his petition to add an ineffective assistance of counsel claim. *Id.* Second, the Ninth
21  Circuit reminded this Court that "[p]ro se motions from prisoners are to be liberally
22  construed." *Id.* Third, the Ninth Circuit did not foreclose Jackson's refined ineffective

assistance of counsel claim and considering it would be in line with the "spirit of the mandate." *See Kellington*, 217 F.3d at 1092–93.

Jackson's supplemental memorandum asks the Court to grant his pro se request to amend. Dkt. 70 at 1. That request is GRANTED. The Court will consider Jackson's supplemental memorandum as his amended habeas petition and will consider his newly asserted ineffective assistance of counsel claim in the first instance.

**B.     Merits of Jackson's Petition**

Under § 2255, the Court may grant relief to a federal prisoner who challenges the imposition or length of his incarceration on the ground that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

An inmate filing a claim for federal habeas relief is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 2255(b). The Ninth Circuit has characterized this standard as requiring an evidentiary hearing when "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (citing *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court

evaluates ineffective assistance of counsel claims under the two-prong test set forth in *Strickland*. To prevail under *Strickland*, a defendant must prove (1) that his counsel's performance was deficient and (2) that this deficient performance was prejudicial. *Id.* The Court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The attorney's performance is evaluated from counsel's perspective at the time. *Id.*

In *Hill v. Lockhart*, the Supreme Court confirmed that the *Strickland* test governs challenges to guilty pleas based on the ineffective assistance of counsel. 474 U.S. 52, 58–59 (1985). A defendant who pleads guilty upon the advice of counsel may attack the voluntary nature of the guilty plea only by showing that the advice he received from counsel to enter the plea was ineffective. *Id.* at 56–57 (citing *Tollet v. Henderson*, 411 U.S. 258, 267 (1973)). An attorney's advice to enter a plea is ineffective if it falls below "'the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). With respect to *Strickland's* prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59 (footnote omitted). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

A defendant has the right to effective assistance of counsel during plea bargain negotiations. *Missouri v. Frye*, 566 U.S. 134, 144–145 (2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)). Counsel who misadvises a defendant about the law

or who improperly coerces a defendant to accept a plea bargain may be found deficient. *See Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.").

Everyone in this case agrees that Johnston had a conversation with at least one of the AUSAs on the case just prior to the change of plea hearing. But the Government contends that, during that conversation, it only represented that it had not offered Young a better deal than Jackson. The parties also do not dispute that Johnston never advised Jackson that the Government's representation was not binding. It is the law of the case that the Government's representation was, in fact, not binding. *See* Dkt. 57 at 16. The remaining questions are (1) whether Johnston's failure to inform Jackson of the non-binding nature of the Government's representation fell below the competence demanded of attorneys in criminal cases (deficient performance), and (2) whether, with such knowledge, Jackson would have rejected the plea agreement and proceeded to trial (prejudice).

### 1. Deficient Performance

The first question goes to deficient performance. Jackson argues that Johnston's performance was deficient because he did not explain to Jackson that the Government's representation regarding Young's plea agreement was not binding. Dkt. 70 at 2. The Government argues that Johnston's performance was not deficient because Johnston "had no reason to think Jackson misunderstood the government's statement" and Johnston effectively explained the sentence Jackson would receive. Dkt. 72 at 21. The Government

1 also points out that Jackson signed the plea agreement, which did not feature the
2 Government's representation about Young, and Jackson represented to the Court at the
3 change of plea hearing that he had not entered into any side agreements in relation to his
4 plea. *Id.* at 21–22.

5       Courts frequently deny habeas petitions where the petitioner argues that counsel
6 was ineffective in failing to explain part of the plea agreement when it is clear that the
7 petitioner understood that part of the plea agreement. *See, e.g.*, *Silva-Romero v. United*
8 *States*, Nos. CV-F-06-0073 AWI, CR-F-05-0191 AWI, 2010 WL 624267, at *2–3 (E.D.
9 Cal. Feb. 22, 2010) (rejecting ineffective assistance claim based on counsel's failure to
10 explain plea agreement because the court explained the consequences of the plea
11 agreement at the change of plea hearing); *see also United States v. Chaves*, 2016 WL
12 5660327, at *7–8 (D. Haw. Sept. 28, 2016) (rejecting ineffective assistance claim based
13 on counsel's failure to explain elements of the charged offense because counsel went
14 over the elements with petitioner, the government went over the elements at the plea
15 hearing, and petitioner confirmed she understood the elements of the crimes).

16       Jackson's claim is different, however, and two cases guide this Court's conclusion
17 that Jackson has set forth a plausible claim of ineffective assistance of counsel and that he
18 is entitled to a hearing.

19       In *Nunes v. Mueller*, the Ninth Circuit affirmed the district court's ruling that
20 Nunes's counsel failed to provide effective assistance at the plea-bargaining stage
21 because he incorrectly communicated the plea offer to him—he informed Nunes that the
22 prosecutor was offering him a 22-year sentence rather than the actually-offered 11-year

sentence. 350 F.3d 1045, 1049 (9th Cir. 2003). The Circuit confirmed that the defendant in a criminal case has the ultimate authority "to make certain fundamental decisions regarding [his] case, [including] whether to plead guilty." *Id.* at 1053. It concluded that Nunes's counsel's performance was deficient because Nunes was denied "the right to participate in the decision as to, and to decide, his own fate." *Id.*

In *Bauder v. Department of Corrections State of Florida*, the Eleventh Circuit affirmed the district court's ruling that Bauder was deprived effective assistance of counsel at the plea-bargaining stage because his counsel misadvised him that he could not face involuntary civil commitment. 619 F.3d 1272, 1273 (11th Cir. 2010). Based on that information, Bauder entered a plea of no contest and was subsequently sentenced to, in part, civil commitment. *Id.* The Eleventh Circuit concluded that Bauder's counsel's assistance was ineffective because he was required to advise him of potential adverse consequences and Bauder maintained that he would have proceeded to trial if he had known there was potential for civil commitment. *Id.* at 1274–75.

Jackson, like all criminal defendants, had "the right to participate in the decision as to, and to decide, his own fate." *Nunes*, 350 F.3d at 1053. Part of that decision involves understanding the potential adverse consequences of pleading guilty. *Bauder*, 619 F.3d at 1274. Johnston concedes that he knew Jackson was concerned about Young receiving a better deal than he did and that he sought assurances from the Government so that the "guilty plea would go through." Dkt. 70-4, ¶¶ 5, 9. It is plausible that Jackson will be able to establish that there is a reasonable probability that he would have rejected the Government's plea deal had he known the assurances involving Young were not binding.

It is similarly plausible that Johnston understood Jackson's position on the issue and should have informed him of the non-binding nature of those assurances.

The Court notes that, in this Circuit, a petitioner's collateral challenge resting on allegations that directly contradict the petitioner's plea statements ordinarily must fail. *Muth v. Fondren*, 676 F.3d 815, 821–822 (9th Cir. 2012) (citations omitted); *see also United States v. Lemaster*, 403 F.3d 216, 220–21 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false.").

It is undisputed that Jackson agreed at the change of plea hearing that he had not made any agreements other than those explicitly stated in the written plea agreement. The Government argues that Jackson's statements affirming the completeness of the plea agreement undermines a necessary part of Jackson's ineffective assistance of counsel claim—that he subjectively believed the Government's assurances about Young were binding. The Court agrees that the disparities between Jackson's statements at the plea hearing and his current assertions are concerning, but they are not fatal. Jackson has previously asserted that Johnston advised him not to mention the Government's assurances regarding Young. *See, e.g.*, Dkt. 35 at 1. Further, Jackson has advanced significant evidence, including declarations from both Johnston and Kellogg, that the Government did make such an assurance, even if that assurance was not binding. While it is unclear why Jackson made these sworn statements, it is plausible that Jackson did believe the Government's assurance was binding.

Jackson has advanced enough to state a plausible claim and will be permitted to advance arguments at his hearing as to why the Court should disregard his sworn statements at his change of plea hearing.

**2.     Prejudice**

The second question goes to prejudice. The Ninth Circuit concluded: "the record before us does not demonstrate that Jackson entered the plea based on a misrepresentation by his attorney." Dkt. 57 at 19. When a defendant who has pled guilty is asserting ineffective assistance of counsel, *Strickland's* prejudice requirement focuses on whether the defendant would have proceeded to trial but for counsel's errors. *Hill*, 474 U.S. at 59. The Ninth Circuit's holding is the law of the case as to the record before it. Thus, in order to show prejudice, Jackson would need to present additional evidence.

The record reviewed by the Ninth Circuit included Jackson's May 2018 affidavit, Johnston's October 2018 affidavit, Miyake's 2019 declaration, and Kellogg's 2019 declaration. On remand, Jackson has supplied two new pieces of evidence in support of his prejudice argument. First, he filed his own 2022 declaration in which he specifically states that he pled guilty "because of the assurances of the prosecutors, in front of [his] lawyer, that Mr. Young would not get a better plea offer," that he "relied on that promise," and that if he had not received that promise, he "would not have plead guilty and would have continued to litigate the case." Dkt. 70-2, ¶ 9. Second, he filed Johnston's 2022 declaration in which he states, in part, that he spoke to Miyake about Young's potential plea deal in front of Jackson "so that his concerns would be addressed and *guilty plea would go through*." Dkt. 70-4, ¶ 9 (emphasis added).

Both of these documents suggest that Jackson may not have accepted the plea deal if he had known that the Government's assurances were not binding. While the Ninth Circuit may not have been able to reach such a conclusion on the record before it, Jackson's new evidence is sufficient to make prejudice plausible and to warrant a hearing.

### III.  ORDER

Therefore, Petitioner Tony J. Jackson's Motion for an Evidentiary Hearing is **GRANTED**. The Court **RESERVES RULING** on the remainder of Jackson's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, Dkt. 1. The parties shall consult and provide a **STATUS REPORT** with potential dates for an evidentiary hearing by **October 21, 2022**. The clerk shall **RENOTE** Jackson's Motion, Dkt. 1, to the Court's October 21, 2022 calendar. The motion will be further renoted when a hearing date is set.

**IT IS SO ORDERED.**

Dated this 12th day of October, 2022.

BENJAMIN H. SETTLE
United States District Judge